**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RICKY R. TAYLOR, II,**

    **Petitioner,**

    **v.**

**WARDEN, LONDON**
**CORRECTIONAL INSTITUTION,**

    **Respondent.**

    **CASE NO. 2:16-CV-780**
    **JUDGE ALGENON L. MARBLEY**
    **Magistrate Judge Chelsey M. Vascura**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. This matter is before the Court on the *Petition*, Respondent's *Return of Writ,*

Petitioner's *Reply*, and the exhibits of the parties. For the reasons that follow, it is

**RECOMMENDED** that this action be **DISMISSED.**

### Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of

the case as follows:

> Early in the morning hours of May 4, 2013, R.M. and his fiancée,
> D.W., were in their car after leaving Club 57 near the intersection
> of Livingston Avenue and Beechwood Road in Columbus. As they
> prepared to drive away, appellant approached the driver's door and
> pointed a gun at them. Appellant then opened the driver's door and
> ordered R.M. and D.W. at gunpoint to give him all of their money
> and other property. After D.W. emptied her handbag and gave
> appellant her bank card, R.M. handed over some money from his
> pockets.
>
> Appellant then directed R.M. and D.W. to exit the vehicle and take
> off their clothes. At this time, appellant took from R.M. over $700
> in cash, his state identification card, wallet, and jewelry. Appellant
> then ordered D.W. to get up off the ground and, at gunpoint, took
> her to the rear of the vehicle. Appellant told D.W., who was

wearing only her top, to put his penis into her vagina. D.W. could not comply initially because, according to her, appellant had an insufficient erection, and D.W. was using a tampon.

Appellant ordered D.W. to remove the tampon, and she dropped it on the ground. Appellant again attempted to penetrate D.W., and this time succeeded. Appellant engaged in sexual intercourse with D.W. for a few minutes, stopping only when D.W. told him that she had recently given birth. Appellant then told D.W. to get back on the ground and said that he was leaving to rob some other people who were just then leaving the club. Appellant threatened that someone else in a nearby vehicle would shoot R.M. and D.W. if either of them moved.

After a few moments, R.M. and D.W. got up and drove away. As the two stopped at the club to inform security of the robbery and sexual assault, they heard gunshots. R.M. then took D.W. to Grant Hospital, where she underwent a sexual assault examination. The sexual assault nurse examiner found semen in D.W.'s underwear that was recovered and analyzed.

Later that same night, Columbus police officers responded to the report of a shooting victim at an apartment building on Maumee Bay Way in Columbus. When police arrived, they found appellant, the shooting victim, on the ground. The officer who put appellant into an ambulance checked his pockets for weapons and found over $700 in cash and R.M.'s state identification. Investigators also found a gold necklace belonging to R.M. at the scene. The crime scene investigators later responded to the Club 57 scene where they found spent shell casings, a spent projectile, loose change, a cigarette pack, and a tampon.

The next day, R.M. identified appellant in a photo array, although D.W. was unable to identify anyone in the array presented to her. After appellant emerged from a coma, a police detective spoke to him at the hospital. In this initial police interview, appellant said that he had been shot on May 2, 2013 in a shootout in the Whitehall Kroger parking lot. A few days later, appellant spoke to another detective and repeated the same account. Appellant denied being present at Club 57 or having sexual intercourse with D.W. that night. Appellant said he had no knowledge of any of the events of May 4, 2013 and did not know how R .M.'s property ended up in his pockets. At trial, appellant attributed these comments to memory loss arising from his shooting and testified that he was at Club 57 on May 4 to complete a drug deal with R.M. and that D.W. was not present.

Appellant was charged by indictment filed on May 23, 2013, with two counts of aggravated robbery; two counts of robbery, felonies of the second degree; two counts of robbery, felonies of the third degree; two counts of kidnapping; one count of rape; and one count of having a weapon while under disability. All counts except the last were charged with firearm specifications. Appellant pled not guilty to all the charges, and a jury trial began on March 18, 2014.

On March 21, 2014, the jury returned a verdict, finding appellant guilty on all counts, including the firearm specifications. For the purposes of sentencing, the trial court merged the two robbery counts and one kidnapping count into the aggravated robbery count with respect to D.W.; the two robbery counts and one kidnapping count into the aggravated robbery count with respect to R.M.; and all the specifications, with the exception of those charged in the aggravated robbery and rape counts with respect to D.W. Appellant was sentenced to 11 years on each aggravated robbery count and the rape count, and 3 years on the weapon under disability count. The court ordered that the aggravated robbery count with respect to D.W., the rape count, the weapon while under disability count, and the two firearm specifications be served consecutively. The court also ordered that the aggravated robbery count with respect to R.M. be served concurrently to the other counts and specifications, for a total incarceration of 31 years. The court also informed appellant that he was a Tier III sexual offender and would be required to register and verify his address in person every 90 days.

II. Assignment of Error

Appellant assigns the following error:

The trial court violated Defendant–Appellant's rights to due process and a fair trial when in the absence of sufficient evidence and against the manifest weight of evidence the trial court found Defendant–Appellant guilty of aggravated robbery, robbery, kidnapping, rape, having a weapon while under disability, and corresponding specifications.

*State v. Taylor*, No. 14AP-254, 2015 WL 3857079, at *1-3 (Ohio App. 10th Dist. June 23, 2015).

On June 23, 2015, the appellate court affirmed the judgment of the trial court. *Id.* On October

28, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Taylor*,

143 Ohio St.3d 1502 (Ohio 2015).  On September 22, 2015, Petitioner filed an application for

reopening of the appeal pursuant to Ohio Appellate Rule 26(B).  (ECF No. 6-1, PageID# 221.)

On February 18, 2016, the appellate court denied the Rule 26(B) application.  (PageID# 236.)

On June 15, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  *State v.

Taylor*, 146 Ohio St.3d 1417 (Ohio 2016); (PageID# 275.)

On August 11, 2016, Petitioner filed this petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  He asserts that he was denied his right to a speedy trial (claim one); that the

trial court improperly failed to merge firearm specifications, and he was denied the effective

assistance of counsel because his attorney failed to raise the issue (claim two); that he was denied

the effective assistance of trial counsel because his attorney failed to have DNA tested (claim

three); and that he was denied the effective assistance of appellate counsel (claim four).

Petitioner additionally asserts that the evidence is constitutionally insufficient to sustain his

convictions and that his convictions are against the manifest weight of the evidence.  *See Reply*

(ECF No. 9, PageID# 772-777.)   It is the position of the Respondent that these claims fail to

provide relief or are procedurally defaulted.

### State-Law Claims

Petitioner asserts that he was denied the right to a speedy trial.  To the extent that

Petitioner asserts the alleged violation of state law, this claim does not provide him relief.  *See

Jackaway v. Woods*, No. 15-cv-11491, 2016 WL 304739, at *3 (E.D. Mich. Jan. 26, 2016)("[a]

violation of a state speedy trial law by state officials, by itself, does not present a cognizable

federal claim that is reviewable in a habeas petition")(citing *Burns v. Lafler*, 328 F. Supp. 2d

711, 722 (citing *Poe v. Caspari*, 39 F. 3d 204, 207 (8th Cir. 1994), *cert. denied.*, 514 U.S. 1024

(1995); *Wells v. Petsock*, 941 F. 2d 253, 256 (3rd Cir. 1991), *cert. denied*, 505 U.S. 1223

(1992)); *Younker v. Warden*, No. 1:10-cv-875, 2011 WL 2982589, at *10 (S.D. Ohio June 24, 2011)(claims based solely on a violation of Ohio's speedy trial statute do not present a cognizable federal constitutional claim subject to review in habeas corpus proceedings)(citing *Norris v. Schotten*, 146 F.3d 314, 328–29 (6th Cir.), *cert. denied*, 525 U.S. 935 (1998)) (other citations omitted). This Court reviews a state prisoner's habeas corpus petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court does not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Moreover, a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied*, 488 U.S. 1011 (1989). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)(quoting *Panzavecchia v. Wainwright*, 658 F.2d 337, 340 (11th Cir. 1984)). "Generally, a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision concerning matters of state law." *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001)(citing *Gall v. Parker*, 231 F.3d 265, 303 (6th Cir. 2000)("[p]rinciples of comity and finality equally command that a habeas court cannot revisit a state court's interpretation of state law, and in particular, instruct that a habeas court accept the interpretation of state law by the highest state court on a petitioner's direct appeal"), *cert. denied*, 533 U.S. 941 (2001)), *cert. denied*, 535 U.S. 940 (2002). "[T]his Court must defer to and is bound by the state courts' determination that Ohio's speedy trial statute was not violated[.]" *Younker,* 2011 WL 2982589, at *10 (citing *Caddy v. Ohio*, No. 3:07cv339, 2010

WL 2640073, at *3 (S.D.Ohio May 18, 2010)(internal citations omitted), *adopted*, 2010 WL 2629797 (S.D. Ohio June 29, 2010)(Black, J.).

Likewise, to the extent that Petitioner presents a claim that his conviction is against the manifest weight of the evidence, this issue does not provide a basis for relief. *See Williams v. Jenkins*, No. 1:15cv00567, 2016 WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016)(citing *Nash v. Eberlin*, 258 F. App'x 761, 765, n.4 (6th Cir. 2007)); *Norton v. Sloan*, No. 1:16-cv-854, 2017 WL 525561, at *5 (N.D. Ohio Feb. 9, 2017)(citing *Ross v. Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at *3 (S.D. Ohio)("[w]hether a conviction is against the manifest weight of the evidence is purely a question of Ohio law")); *see also Taylor v. Warden, Lebanon Correctional Inst.*, No. 2:16-cv-237, 2017 WL 1163858, at *10–11 (S.D. Ohio March 29, 2017) (same) (citations omitted).

Under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

**Procedural Default**

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982 (*per curiam*)(citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas . . . ." *Coleman* v. *Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)), *cert. denied*, 544 U.S. 928 (2005). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in

the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must decide whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray*, 477 U.S. at 479). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir.), *cert. denied*, 546 U.S. 1017 (2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in Coleman: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly

> exhausted his state remedies," it could hardly be said that, as
> comity and federalism require, the State had been given a "fair
> 'opportunity to pass upon [his claims].' " *Id*., at 854, 526 U.S. 838,
> 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)
> (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70
> S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a

procedural default occurred, it must not consider the procedurally defaulted claim on the merits

unless "review is needed to prevent a fundamental miscarriage of justice, such as when the

petitioner submits new evidence showing that a constitutional violation has probably resulted in

a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir.

2013) (citing *Murray*, 477 U.S. at 495–96), *cert. denied*, __ U.S. __, 135 S. Ct. 1545 (2015).

Petitioner asserts that he was denied his constitutional right to a speedy trial, that the trial

court improperly failed to merge firearms specifications as constituting allied offenses of similar

import, and that he was denied the effective assistance of trial counsel.  However, Petitioner

failed to raise these same claims on direct appeal, where he was represented by new counsel.  He

may now no longer do so under Ohio's doctrine of *res judicata*.  *See State v. Cole*, 2 Ohio St. 3d

112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981); *State v. Perry*, 10 Ohio St. 2d 175 (1967).

Additionally, the United States Court of Appeals for the Sixth Circuit has held that Ohio's

doctrine of *res judicata* constitutes an adequate and independent state ground to preclude federal

habeas corpus review.  *See Williams v. Bagley*, 380 F.3d 932, 966-67 (6th Cir. 2004)(citing

*Greerl*, 264 F.3d at 673; *Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002); *Jacobs v. Mohr*,

265 F.3d 407, 417 (6th Cir. 2001); *Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir.), *cert. denied*,

528 U.S. 946 (1999)), *cert. denied*, 544 U.S. 1003 (2005).  This Court has consistently

determined that Ohio's *res judicata* rules serve important state interests in the finality of criminal

convictions. *See, e.g. Davis v. Morgan*, No. 2:15-cv-00613, 2016 WL 6493420, at *11 (S.D. Ohio Nov. 2, 2016), *adopted and affirmed*, 2017 WL 56034 (S.D. Ohio Jan. 5, 2017). Petitioner has thereby procedurally defaulted the foregoing claims for relief.

He may still secure review of the merits of his claims if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001)(citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)(internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, and ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.), *cert. denied*, 543 U.S. 989 (2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), *cert. denied sub nom., Hartman v. Bobby*, 554 U.S. 924 (2008).

As cause for his procedural default, and in habeas corpus claim four, Petitioner asserts the denial of the effective assistance of appellate counsel. This Court will consider the merits of that claim, in order to determine whether Petitioner can establish cause and prejudice for his procedural default.

### Standard of Review

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme

malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, __ U.S. __, 134 S. Ct. 10, 16 (2013)(quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010)("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1)

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir.)

(citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006), *cert. denied*, 551 U.S. 1134 (2007)),

*cert. denied*, __ U.S. __, 134 S. Ct. 315 (2013). The United States Court of Appeals for the Sixth

Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id*. at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See*

*Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

### Ineffective Assistance of Appellate Counsel

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . .

. to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective

assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011)

(citation omitted). The United States Supreme Court set forth the legal principles governing

claims of ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 556 (1984).

*Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that

his counsel's performance was deficient and that he suffered prejudice as a result. *Id*. at 687;

*Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied*, __ U.S. __, 134 S. Ct. 680 (2013).

A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's

representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F.

App'x 749, 754 (6th Cir. 2013)(quoting *Davis v. Lafler,* 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted), and citing *Strickland,* 466 U.S. at 687), *cert. denied,* __ U.S. __, 135 S. Ct. 122 (2014).  To make such a showing, a petitioner must overcome the "strong [ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 687.  "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009)(quoting *Strickland*, 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746 (2000); *Burger v. Kemp*, 483 U.S. 776 (1987).... Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. Id...... The attorney need not advance every argument, regardless of merit, urged by the appellant. Jones v. Barnes, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D. Ohio March 6, 2013).  Factors to be considered in determining whether a defendant has been denied the effective assistance of appellate counsel include:

> (1) Were the omitted issues "significant and obvious"?

> (2) Was there arguably contrary authority on the omitted issues?

> (3) Were the omitted issues clearly stronger than those presented?

> (4) Were the omitted issues objected to at trial?

> (5) Were the trial court's rulings subject to deference on appeal?

(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?
(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes,* 171 F.3d at 427–28 (citations omitted).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington,* 562 U.S. at 105. The Court observed that, while "'[s]urmounting Strickland's high bar is never . . . easy,' . . . , [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is even more difficult." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and citing *Strickland*, 466 U.S. at 689). The Supreme Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

## A.  Speedy Trial

Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to assert on appeal that he had been denied the right to a speedy trial. The

state appellate court, applying the standard set forth in *Strickland*, rejected this claim in relevant part as follows:

> Appellant's first proposed assignment of error concerns an alleged violation of his right to speedy trial under the U.S. and Ohio Constitutions. An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the U.S. Constitution and Ohio Constitution, Article I, Section 10. . . .
>
> The proper standard of review in speedy trial cases is simply to count the number of days passed, while determining to which party the time is chargeable under the various tolling events described in R.C. 2945.71 and 2945.72. . . .
>
> Upon demonstrating that more than the defined period has elapsed before trial, a defendant establishes a prima facie case for dismissal based on a speedy trial violation. . . . Once a defendant establishes a prima facie case for dismissal, the state bears the burden to prove that time was sufficiently tolled and the speedy trial period extended.
>
> If the court finds that the state did not violate appellant's statutory right to a speedy trial, pursuant to R.C. 2945.71, the court must next address whether his constitutional right to a speedy trial was violated. In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the United States Supreme Court set forth four factors to consider when evaluating whether an appellant's right to a speedy trial was violated: (1) whether the delay before trial was uncommonly long, (2) whether the government or criminal defendant is more to blame for the delay, (3) whether in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as a result of the delay. These factors are balanced in a totality of the circumstances setting with no one factor controlling. *Id.* The Supreme Court of Ohio has recognized this test to determine if an individual's constitutional speedy trial rights have been violated. *State v. Selvage*, 80 Ohio St.3d 465, 467 (1997).
>
> The first of these factors, the length of the delay, "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker* at 530; *Doggett v. United States,* 505 U.S. 647, 651 (1992). Therefore, the Barker analysis is only triggered once a "presumptively prejudicial" delay is shown. *Id.* at 651-52; *State v. Yuen*, 10th Dist. No. 03AP-513,

2004-Ohio-1276, ¶ 10. Generally, delay is presumptively prejudicial as it approaches one year. *State v. Miller*, 10th Dist. No. 04AP-285, 2005-Ohio-518, ¶ 12.

***

The record reflects numerous continuances between July 23, 2013 and the trial date of March 18, 2014. On July 23, 2013, a waiver of right to speedy trial until September 11, 2013 was docketed. This waiver was signed by counsel but there is a notation that appellant "refused to sign." On September 11, 2013, a waiver of right to speedy trial until October 9, 2013 was docketed. This waiver was signed by counsel but there is a notation that appellant "refused to sign." Furthermore, although this waiver was docketed on October 10, 2013, and there is no transcript of proceedings from October 9 or 10, 2013, it does appear from other documents docketed that the waiver of right to speedy trial was signed and provided to the court on October 9, 2013. On October 24, 2013, a waiver of right to speedy trial until October 28, 2013 was docketed. This waiver was signed by counsel but there is a notation that appellant "refused to sign." On November 5, 2013, a waiver of right to speedy trial until December 16, 2013 was docketed. This waiver was signed by appellant's counsel but there is a notation that appellant "refused to sign." Furthermore, although this waiver was docketed on November 5, 2013, and there is no transcript of proceedings from November 5, 2013, it does appear from other documents docketed that the waiver of right to speedy trial was signed and provided to the court on October 28, 2013, including a recognizance bond. On December 17, 2013, a waiver of right to speedy trial until January 27, 2014 was docketed. This waiver was signed by appellant's counsel but there is a notation that appellant "refused to sign." Furthermore, it does appear from other documents docketed that the waiver of right to speedy trial was signed and provided to the court on December 16, 2013. On January 27, 2014, a waiver of right to speedy trial until March 18, 2014 was docketed. This waiver was signed by appellant's counsel and was also signed by appellant. On March 25, 2014, a judgment entry was docketed indicating that appellant was tried by a jury on March 19, 2014. Nevertheless, it appears from volume I of the transcript that trial began on the afternoon of March 18, 2014.

Appellant argues he never requested any type of continuances "what so ever" and consistently requested that his speedy trial rights be protected. (Application for Reopening.) We note that most of the associated waivers were solely executed by his defense

counsel and some of them reveal that appellant refused to sign the waiver. However, the last waiver does contain the signature of appellant. Nevertheless, this does not create a speedy trial issue in this case.

"It is well-established a defendant is bound by the actions of counsel in waiving speedy trial rights by seeking or agreeing to a continuance, even over the defendant's objections." *State v. Glass*, 10th Dist. No. 10AP-558, 2011-Ohio-6287, ¶ 17, citing *State v. McQueen*, 10th Dist. No. 09AP-195, 2009-Ohio-6272, ¶ 37. "A defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." *State v. McBreen*, 54 Ohio St.2d 315 (1978), syllabus; *see also State v. Watson*, 10th Dist. No. 13AP-148, 2013-Ohio-5603, ¶ 22.

Given this precedent, we give full effect to the waivers executed by appellant's trial counsel. Accordingly, we find that appellant has failed to establish a colorable claim of ineffective assistance of appellate counsel for failure to raise a violation of his statutory right to a speedy trial in this case. We further note that appellant did not articulate the kind of presumptively prejudicial delay that would give rise to a constitutional speedy trial violation under the factors set forth in *Barker* and *Selvage*. Therefore, we find as well that appellant has not established a colorable claim of ineffective assistance of appellate counsel for failure to raise a violation of appellant's constitutional right to a speedy trial.

*Memorandum Decision* (ECF No. 6-1, PageID# 238-41.)

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy trial and public trial." U.S. Const. amend. VI. "The Supreme Court has stated that the Sixth Amendment's speedy trial guarantee is 'an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.'" *Bennett v. Warden, Marion Correctional Inst*., 782 F. Supp. 2d 466, 479 (S.D. Ohio 2011)(citing *United States v. Marion*, 404 U.S. 307, 320 (1971)). The protection of the Sixth Amendment is activated "only when a criminal prosecution has

begun and extends only to those persons who have been 'accused' in the course of that prosecution." *Marion,* 404 U.S. at 313. The Supreme Court has recognized that the constitutional right to a speedy trial permits some delays depending on the circumstances of each case, and cannot "be quantified into a specified number of days or months." *Bennett,* 782 F. Supp. 2d at 480 (quoting *Barker v. Wingo*, 407 U.S. 514, 521-23 (1972)). In *Barker,* the Supreme Court held that a review court should conduct a "balancing test" to determine whether a criminal defendant has been denied the right to a speedy trial, considering the following four factors: the "[l]ength of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530 (footnote omitted). The length of the delay is "a triggering mechanism." *Id.* "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* "The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier." *Maples v. Stegall,* 427 F.3d 1020, 1026 (6th Cir. 2005) (citations omitted). "A delay approaching one year is presumptively prejudicial and triggers application of the remaining three factors." *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992)).

Petitioner has not demonstrated that the Ohio Court of Appeals' decision contravened or unreasonably applied clearly established federal law as determined by the United States Supreme Court or that it was based on an unreasonable determination of the facts in light of the evidence presented. On May 23, 2013, the State filed the Indictment against him. (ECF No. 6-1, PageID# 74.) Trial commenced approximately nine and one half months later, on March 18, 2014. However, from July 23, 2013, to January 27, 2014, defense counsel waived Petitioner's right to a speedy trial by requesting continuances in order to prepare for trial. Petitioner claims that the prosecutor requested the continuances of the trial date, *see Traverse* (ECF No. 9, PageID# 760);

however, the record contradicts this claim. Moreover, Petitioner has failed to rebut the presumption of correctness afforded to the state appellate court's factual findings explicitly indicating to the contrary. Also, on January 27, 2014, Petitioner signed a waiver of his right to a speedy trial and requested a continuance of the trial date until March 18, 2014, when trial commenced. "Not all delays are susceptible to equal blame." *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir.)(citing *Barker,* 407 U.S. at 531), *cert. denied*, 540 U.S. 973 (2003).

> For instance, government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while "more neutral" reasons such as negligence or overcrowded dockets weigh against the state less heavily. *United States v. Schreane*, 331 F.3d 548, 553-54 (6th Cir.2003) (citing cases). The purpose of the inquiry is to determine "whether the government or the criminal defendant is more to blame for [the] delay." *Doggett*, 505 U.S. at 651, 112 S.Ct. 2686.

*Maples*, 427 F.3d at 1026. The record fails to reflect that the delay in bringing Petitioner to trial was motivated either by bad faith on the part of the government or the desire to seek a tactical advantage. To the contrary, the record indicates that most of the delay in bringing Petitioner to trial was caused by the defense, in order to prepare. Accordingly, the reasons for the delay do not support a Sixth Amendment violation. Moreover, On October 28, 2013, Petitioner was released on a recognizance bond.[1] Petitioner does not allege, and the record does not reflect, that his defense was impaired by the delay in bringing him to trial. Therefore, weighing the factors set forth in *Barker*, Petitioner has failed to establish the denial of the right to a speedy trial under the Sixth Amendment. Petitioner likewise cannot establish the denial of the effective assistance of appellate counsel based on his attorney's failure to raise the issue.

---

[1] Petitioner states that, on October 28, 2013, his attorney filed a motion to dismiss the charges on speedy trial grounds. *Traverse* (Doc. 9, PageID# 761.) Again, however, the record does not support this allegation.

## B. Merger of Firearm Specifications

Petitioner also asserts that he was denied the effective assistance of counsel because his attorney failed to argue on appeal that the trial court should have merged all of the firearm specifications. The state appellate court rejected this claim in relevant part as follows:

> Appellant's second proposed assignment of error concerns an alleged merger violation. Specifically, appellant alleges the trial court failed to merge his multiple firearm specifications as allied offenses of similar import pursuant to R.C. 2941.25.
>
> R.C. 2929.14(B)(1)(g) states:
>
>> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.
>
> It appears from our review of the sentencing entry that the trial court applied R.C. 2929.14(B)(1)(g) when it stated: "The Defendant will be sentenced on the specifications as to Count One and Five and all other specifications merge." (Judgment Entry, 2.) Furthermore, it appears that the trial court found that prison terms were mandatory for the specifications pursuant to R.C. 2929.13(F). (Judgment Entry, 2.)
>
> Appellant does not address nor point us to any authority addressing the application of R.C. 2929.14(B)(1)(g) and 2929.13(F) to his merger argument. Therefore, we find that appellant has failed to establish a colorable claim of ineffective assistance of appellate counsel for failure to argue that trial counsel was ineffective for

not objecting to the trial court's failure to merge the firearm specifications.

*Memorandum Decision* (ECF No. 6-1, PageID# 241-42.)

Petitioner argues that his sentences on all charges should have been merged at sentencing as allied offenses of similar import. According to Petitioner, he committed only one actual criminal offense, and therefore only one penalty should have been imposed. (ECF No. 9, PageID# 765.) This claim plainly fails.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977). The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932)(requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to address the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger*, the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.

However, "[w]here two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so." *Bates v. Crutchfield*, No. 1:15-cv-817, 2016 WL 7188569, at *5 (S.D. Ohio Dec. 12, 2016)(citing *Garrett v. United*

*States*, 471 U.S. 773, 779 (1985); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009), *cert. denied*, 560 U.S. 945 (2010)). Thus, "[e]ven if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013)(citing *Johnson,* 467 U.S. at 499 n. 8; *Hunter*, 459 U.S. at 368–69). Moreover, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Id.* (citing *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)).

> An Ohio court of appeals decision of a double jeopardy claim which is limited to the application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim. *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), citing *State v. Rance*, 85 Ohio St. 3d 632 (1999), overruled by *State v. Johnson*, 128 Ohio St. 3d 153 (2010). "What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.' " *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

*Bates*, 2016 WL 7188569, at *5.

Count Ones through Five involved the alleged victim, Domonique Washington, and charged Petitioner with aggravated robbery, in violation of O.R.C. § 2911.01; robbery, in violation of O.R.C. § 2911.02(A)(2), (3);[2] and kidnapping, in violation of O.R.C. § 2905.01; and

---

[2] O.R.C. § 2911.02 provides in relevant part:

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control;

Count Five charged him with the rape, in violation of § 2907.02. Counts Six through Nine involved the alleged victim, Rommel Martin, and charged Petitioner with aggravated robbery; robbery; and kidnapping. All of the foregoing charges contained firearm specifications. Count Ten charged Petitioner with having a weapon while under disability, in violation of O.R.C. § 2923.13. *Indictment* (ECF No. 6-1, PageID# 82.) However, as discussed by the state appellate court, the trial court sentenced Petitioner on two counts of aggravated robbery against different victims (merging the remaining counts of robbery and kidnapping involving those victims); having a weapon while under disability; rape; and on the firearm specifications related to his convictions on aggravated robbery and rape against Domonique Washington. Petitioner's sentence on the aggravated robbery of Rommel Martin was to run concurrently to the other sentences imposed.

Plainly, the trial court's imposition of sentence does not violate the Double Jeopardy Clause. The offenses of rape, aggravated robbery, and having a weapon while under disability, all require different elements, or proof of facts, under the *Blockburger* test and/or involve separate victims. Further, the trial court's imposition of sentences on firearm specifications related to his aggravated robbery and rape convictions does not violate the Double Jeopardy Clause. *See, e.g., Stevens v. Warden, Lebanon Correctional Institution*, No. 3:12-cv-00034, 2014 WL 111174, at *7 (S.D. Ohio Jan. 10, 2014)(multiple three-year sentences on separate firearm specifications involving same gun does not violate Double Jeopardy Clause); *Carter v. Carter*, 59 F. App'x 104, 106 (6th Cir. 2003)(Ohio judiciary reasonably concluded that the

---

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;

(3) Use or threaten the immediate use of force against another.

(B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.

multiple sentences imposed for the firearms specifications did not violate the Double Jeopardy Clause). Therefore, Petitioner has failed to establish the denial of the effective assistance of appellate counsel due to his attorney's failure to raise this issue on appeal.

Petitioner also argues that the trial court failed to make statutorily required findings to support the imposition of more than minimum and consecutive terms of incarceration. *Traverse* (ECF No. 9, PageID# 768.) Petitioner did not raise this issue on direct appeal, and he did not present it in his Rule 26(B) application. Therefore, he has procedurally defaulted the claim for review in these proceedings, and he has failed to establish cause for this procedural default. Moreover, the claim involves a matter of state law, and, therefore, it does not provide a basis for relief. *See Cisco v. Warden, Chillicothe Correctional Institution,* No. 2:14-cv-02025, 2015 WL 7295434, at *12 (S.D. Ohio Nov. 19, 2015)(citing *Estelle v. McGuire*, 502 U.S. at 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)); *Pulley*, 465 U.S. at 41.

### C. Ineffective assistance of trial counsel

Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise a claim of the denial of the effective assistance of trial counsel. The state appellate court rejected this claim in relevant part as follows:

> Appellant's third proposed assignment of error concerns an alleged failure to object to the presentation and admission of two DNA analyses because a second unknown suspect in this case was never tested. Appellant points to testimony that a DNA sample from the prosecuting witness's underwear could be attributed to "[two different] individuals." (Application to Reopen.) Appellant states that he has consistently maintained that he did not rape the victim in this case. In response, the state asserts that "Taylor seems to think that there was an unknown profile found in the victim's underwear. He is wrong. Testing reveals that semen recovered from the victim's underwear contained a DNA mixture containing her and Taylor's DNA. There was no 'second suspect.' " (State's Memorandum Contra.)

Appellant does not point to any specific place in the record to support his assertion of alleged error. However, we not that on direct appeal, appellant's counsel raised the issue of whether appellant's convictions, including his rape conviction, were supported by sufficient evidence and whether they were against the manifest weight of the evidence. On page 24 of appellant's merit brief, counsel generally addressed alleged deficiencies in the DNA testing. At ¶ 21-25 of *Taylor,* 2015-Ohio-2490, we discussed the sufficiency of evidence as it related to the rape charge. At ¶ 30-39 of *Taylor*, we discussed appellant's manifest weight argument. We found that the rape conviction was supported by sufficient evidence and was not against the manifest weight of the evidence.

It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error. . . . Rather, the burden of affirmatively demonstrating error on appeal rests with the party asserting error. App.R. 9 and 16(A)(7); *State ex rel. Fulton v. Halliday,* 142 Ohio St. 548 (1944). Pursuant to App.R. 16(A)(7), an appellant must present his or her contentions with respect to each assignment of error presented for review and the reasons in support of those contentions, including citations to legal authorities and parts of the record upon which the appellant relies. An appellate court may disregard arguments if the appellant fails to identify the relevant portions of the record from which the errors are based. App.R. 12(A)(2); *In re C.C.*, 10th Dist. No. 04AP-883, 2005-Ohio-5163, ¶ 80. Stated another way, "failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist. 1996).

Accordingly, we find that appellant has failed to establish a colorable claim of ineffective assistance of appellate counsel for failure to argue that trial counsel was ineffective for failing to raise this issue regarding DNA analysis.

*Memorandum Decision* (ECF No. 6-1, PageID# 242-43.)

As discussed by the state appellate court, the record does not support Petitioner's claim that defense counsel performed in a constitutionally ineffective manner in regard to DNA evidence. Petitioner has failed to establish the denial of the effective assistance of appellate counsel for failing to raise the issue on appeal.

Petitioner argues that his attorney improperly prevented Deonte Christian from testifying as a defense witness. *Traverse* (ECF No. 9, PageID# 770.)[3] Again, it does not appear that Petitioner previously raised this claim in the state courts, and, therefore, it is procedurally defaulted. Moreover, the record does not indicate that Christian would have provided exculpatory evidence for the defense.

Therefore, Petitioner has failed to establish that he was denied the effective assistance of appellate counsel. He has likewise failed to establish cause for his procedural defaults.

## Actual Innocence

Petitioner may still secure review of these claims on the merits, if he establishes that it is "more likely than not" that new evidence, not previously presented, would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005); *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995).

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—

---

[3] Petitioner has attached the summary of the interview of Deonte Christian by Detective Robert Wachalec of the Columbus Police Department. (ECF No. 9-3, PageID# 787.) Christian stated that he was with Petitioner on the night at issue, but he was drunk, and had no knowledge of how Petitioner may have gotten shot. He did not know if Petitioner had a gun with him that night.

whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter*, 395 F.3d at 589–90 (footnote omitted). Petitioner does not meet these standards here.

After an independent review of the record, the Court does not deem this to be so extraordinary a case as to relieve petitioner of his procedural default.

### Sufficiency of the Evidence

Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions. The state appellate court rejected this claim as follows:

Whether evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). A reviewing court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the appellant's guilt beyond a reasonable doubt. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A reviewing court, therefore, determines not whether the prosecution's evidence is to be believed but whether, if believed, the evidence against an appellant would support conviction. *Thompkins* at 390.

A. Sufficiency of the Evidence—Counts 1 and 6 Aggravated Robbery

To convict appellant of aggravated robbery in violation of R.C. 2911.01(A)(1), the state was required to prove that, while commiting a theft offense as defined in R.C. 2913.01(K), appellant had a deadly weapon on or about his person or under his control and displayed or brandished the weapon or indicated that he possessed the weapon. The definition of theft offense, pursuant to R.C. 2913.01(K), includes violations of R.C. 2911.02, robbery, as well as R.C. 2913.02, theft. Theft prohibits a person, with purpose to deprive the owner of property, from knowingly obtaining or

exerting control over the property, without consent of the owner, by threat or by intimidation. A person acts with a particular purpose when "it is [his] specific intention to cause a certain result." R.C. 2901.22(A). Deadly weapon is defined in R.C. 2923.11 as "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon."

R.M. testified that appellant "come up from the side of the car with the gun and pointed—and put it to the window" of the car in which he and D.W. were parked. (Tr. Vol.I, 47.) R.M. stated that, after demanding money from D.W., he turned to R.M. and said "[W]hat you got?" (Tr. 47.) R.M. then gave him money and other items that were in his pockets. R.M. testified that appellant searched his pockets and took his jewelry, personal identification, wallet, pocketknife, and approximately $700 from him at gunpoint.

Detective Kevin Jackson testified that he responded later that night to a report that a shooting victim, who later turned out to be appellant, was found at a residential complex. At that scene, he found a wallet, R.M.'s personal identification, a pocketknife, jewelry, and approximately $700. Officer Heidi Dripps testified that she was the officer who removed R.M.'s personal identification and the $700 from appellant's pockets upon arriving at the scene.

Furthermore, R.M. positively identified appellant in a photo array and testified in court that appellant was the person who pointed a gun at D.W. while she was in the driver's seat of their parked car and demanded money and their other property. Although D.W. was unable to identify a photograph of appellant in a police photo array, she testified that the perpetrator put a gun in her face and told her to "shut up, give me all your money." (Tr. Vol.I, 100.) D.W. further testified that she emptied out her handbag at gunpoint and gave appellant her bank card. Appellant admitted during an interview with police that he had a 9 mm Hi–Point on the night of the events in question, although he denied it at trial. In light of R.M. and D.W.'s testimony, coupled with R.M.'s photo array identification of appellant, the record contains sufficient evidence supporting the jury's verdict that appellant committed aggravated robbery in violation of R.C. 2911.01 both with respect to D.W. and R.M.

B. Sufficiency of the Evidence—Counts 2 and 7 Robbery, Felonies Second Degree

To convict appellant of robbery in the second degree in violation of R.C. 2911.02(A)(1) or (2), the state was required to prove that appellant, in attempting or committing a theft offense or in fleeing immediately thereafter, had a deadly weapon on or about his person or under his control and/or inflicted, attempted to inflict, or threatened to inflict physical harm on another. Theft and deadly weapon are defined above in our analysis of the aggravated robbery counts. The record contains sufficient evidence supporting the jury's conclusion that appellant committed a theft offense against D.W. and R.M. while in possession of a deadly weapon. Additionally, D.W. and R.M. both testified that appellant, as he was fleeing the scene, told them that, if they got up off the ground, someone in a nearby car would shoot them. In view of R.M. and D.W.'s testimony, the record contains sufficient evidence supporting the jury's verdict that appellant committed robbery in the second degree in violation of R.C. 2911.02(A)(1) and (2).

C. Sufficiency of the Evidence—Counts 3 and 8 Robbery, Felonies Third Degree

To convict appellant of robbery in the third degree in violation of R.C. 2911.02(A)(3), the state was required to prove that appellant, in attempting or committing a theft offense, or in fleeing immediately thereafter, used or threatened the immediate use of force against D.W. and R.M. Force means "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). As noted in our discussion of facts regarding the aggravated robbery and robbery of the second degree, the record contains sufficient evidence supporting the jury's conclusion that appellant committed a theft offense against D.W. and R.M. while threatening the immediate use of force against another. R.M. testified that appellant pointed a gun at him during the robbery and made him lie on the ground at gunpoint afterward. R.M. and D.W. testified that appellant pointed a gun at D.W. a few inches from her head. D.W. testified that, upon fleeing, appellant threatened that an accomplice would shoot them if they got up off the ground. This evidence constitutes sufficient evidence supporting the jury's verdict that appellant committed robbery in the third degree in violation of R.C. 2911.02(A)(3).

D. Sufficiency of the Evidence—Counts 4 and 9 Kidnapping

To convict appellant of kidnapping in violation of R .C. 2905.01, the state was required to prove that appellant by force, threat, or deception, restrained D.W. and R.M. of their liberty for the

purpose of facilitating the commission of any felony or to engage in sexual activity, as defined in R.C. 2907.01, against the victim's will. To restrain one of his or her liberty means to limit or restrain another's freedom of movement. The restraint need not be for any specific duration or in any specific manner. 2 Ohio Jury Instructions, CR Section 505.01(A) (Rev. Jan. 20, 2007). Sexual activity means sexual conduct or sexual contact or both. R.C. 2907.01(C).

R.M. testified that, after taking their money and other property, appellant demanded that both he and D.W. get out of the car and then made them each take off their clothes and lie on the ground. While R.M. was on the ground, appellant raped D.W., at which point appellant told R.M., "[D]on't look at me, I'm going to shoot you." (Tr. Vol.I, 54.) According to R.M., at no time did appellant put down his weapon. He also testified that he did not run away because he was both scared to try and concerned about what would happen to D.W. He further testified that, after raping D.W., appellant threw her back on the ground and told her, "[L]ay down, and if you all move, my dude in the car is going to shoot, you know what I mean?" (Tr. Vol.I, 56.) D.W. testified similarly that, after taking their money and other property, appellant made them take off their clothes and lie down on the ground while he pointed a gun at her. This testimony is sufficient evidence to support the jury's conclusion that appellant deprived D.W. and R.M. of their liberty.

A conviction under R.C. 2905.01 requires that the trier of fact also find that appellant restrained D.W. and R.M. with purpose to facilitate aggravated robbery or robbery or with purpose to engage in sexual activity against D.W.'s will. A person acts purposely when it is his specific intention to cause a certain result. R.C. 2901.22(A). Such intent "must be gathered from the surrounding facts and circumstances under proper instructions from the court." *State v. Huffman*, 131 Ohio St. 27, 28 (1936). In view of R.M. and D.W.'s testimony that appellant made D.W. take off her clothes and lie on the ground in order to rob her, rape her (as discussed below), and flee the scene, and held R.M. at gunpoint in order to rob him and flee the scene, the record contains sufficient evidence to support the jury's verdict that appellant kidnapped D.W. and R.M. in violation of R.C. 2905.01.

E. Sufficiency of the Evidence—Count 5 Rape

To convict appellant of rape in violation of R.C. 2907.02(A)(2), the state was required to prove that appellant engaged in sexual

conduct with D.W. and purposely compelled her to submit by force or threat of force. Sexual conduct includes vaginal penetration, however slight, without privilege to do so. R.C. 2907.01(A).

R.M. testified that, after appellant made him and D.W. remove their clothes and lie on the ground, appellant took D.W. at gunpoint to the back of their car and raped her. R.M. testified in great detail, remarking that appellant had to make multiple attempts to penetrate D.W. because she was using a tampon. According to R.M., after making D.W. remove the tampon, appellant proceeded to rape her, after which he made her lie down on the ground again.

D.W. testified that appellant pointed a gun in her face and made her take her clothes off, after which he leaned her against the back of the car and raped her. She testified that he used the gun to force her to submit to his demands. D.W. testified that appellant had difficulty penetrating her vagina initially because he did not have a sufficient erection. She also testified that he could not penetrate her until she removed her tampon, which was subsequently discovered at the scene by crime scene investigators. D.W. testified that he continued to rape her for three or four minutes and that he maintained possession of his gun the entire time. D.W. also testified that, throughout the rape, she was afraid that appellant would shoot her and R.M.

Sexual assault nurse examiner Theresa Colbert provided corroborating testimony. She testified that, during the sexual assault exam, D.W. reported that the rape included vaginal penetration and that the perpetrator possessed a gun during the assault.

In light of this testimony and physical evidence, the record contains sufficient evidence to support the jury's verdict that appellant raped D.W. in violation of R.C. 2907.02.

F. Sufficiency of the Evidence—Count 10 Having a Weapon While Under Disability

To convict appellant of having a weapon while under disability in violation of R.C. 2923.13, the state was required to prove that appellant knowingly acquired, had, carried, or used a firearm or dangerous ordnance if he had previously been convicted of a felony of violence or involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse. The state was further required to prove that appellant had been

previously convicted of a felony offense of violence or a felony offense involving the illegal possession of a drug of abuse. Appellant admitted at trial previous felony convictions for aggravated robbery with a gun specification and possession of drugs with a carrying a concealed weapon violation.

Firearm is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the jury may rely upon circumstantial evidence, such as appellant's words and actions as described by the state's witnesses. R.C. 2923.11(B)(2). Deadly weapon "means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R .C. 2923.11(A).

Both D.W. and R.M. testified that appellant carried and brandished a handgun while robbing them and raping D.W. and that appellant never relinquished possession of the weapon. R.M. further testified that he thought the gun was a "rusty 9–millimeter, something like that." (Tr. Vol.I, 49.) He further described the gun as a semiautomatic type of handgun that ejects shell casings out. R.M. testified he heard "a whole bunch of gunshots" when he and D.W. notified the bar staff at Club 57 what had happened to them. (Tr. Vol.I, 59.) Detective Kevin Jackson testified that spent shell casings were found at the scene and that the casings were of a "9–millimeter caliber and size, and the make and model of it was a Luger Hornady." (Tr. Vol.I, 193.) Appellant himself admitted, during his initial police interview, to possessing a 9 mm Hi–Point on the night of the events in question, although he subsequently denied this account at trial. Even disregarding appellant's conflicting accounts, in view of R.M. and D.W.'s testimony, the record contains sufficient evidence supporting the jury's verdict that appellant had a weapon while under disability in violation of R .C. 2923.13.

G. Sufficiency of the Evidence—Firearm Specifications

To convict appellant on the firearm specifications attached to Counts 1–9, the state was required to prove that appellant had a firearm on or about his person or under his control while committing the offenses and that he displayed or brandished the

firearm, indicated that he possessed the firearm, or used it to facilitate commission of the offense. R.C. 2941.145. As noted in our discussion of Count 10, having a weapon under disability, there was more than sufficient evidence supporting the firearm specifications.

Appellant maintains that his convictions with respect to D.W. were against the manifest weight of the evidence because he offered competent, credible evidence that she was not even present on the night in question. Appellant also argues that D.W.'s testimony was not credible because she testified that she went directly to the hospital after the incident, while her statement at the hospital, as recounted by nurse Colbert, was that she first went to her aunt's house before proceeding to the hospital.

Appellant further argues that R.M.'s testimony corroborates appellant's version of the night's events, rather than the state's. Specifically, R.M.'s testimony that he typically visits Club 57 only early in the evening, according to appellant, supports the conclusion that R.M. was meeting appellant to consummate a drug deal. According to appellant, such a conclusion would support his argument that R.M. voluntarily handed over his wallet as collateral for the undelivered drugs. Appellant also argues that R.M.'s testimony was legally insufficient to induce belief because he had a motivation to lie about his activities in order to avoid violating his federal parole for prior drug-related felony convictions. Appellant also states that both R.M. and D.W. gave conflicting testimony about the property taken from R.M. because R.M. testified that he was robbed of over $700, his gold necklace, and a pocketknife, while D.W. admitted that R.M. was not known to wear jewelry or carry a knife, and R.M. testified that he did not usually carry that much cash.

Finally, appellant argues that the state failed to provide, in support of the firearm specifications or the having a weapon under disability count, credible evidence that appellant possessed a firearm or any weapon at all during the night in question.

While there was conflicting testimony regarding D.W.'s exact itinerary from the Club 57 scene to the hospital, "an accused is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Rankin*, 10th Dist. No 10AP–1118, 2011–Ohio–5131, ¶ 29. The jury, as trier of fact, may take into consideration a witness's conflicting testimony in determining her credibility and the persuasiveness of her account by either discounting or resolving the discrepancies.

*Midstate Educators Credit Union, Inc. v. Werner*, 175 Ohio App.3d 288, 2008–Ohio–641 (10th Dist.). A jury, as finder of fact, may believe all, part, or none of a witness's testimony. Furthermore, not all conflicting testimony raises serious questions about credibility. Having heard both D.W.'s initial report to nurse Colbert and her partially conflicting testimony at trial, the jury could have chosen to resolve the conflict in the state's favor, or it could have resolved that portion of the testimony against the state while crediting the remainder of D.W.'s testimony. In any event, the state also provided R.M.'s testimony against appellant, and the jury heard appellant's own conflicting accounts of the night in question. It cannot be said that, by choosing to credit the state's case, in spite of D.W.'s partially conflicting testimony, the jury lost its way.

 Turning to R.M. and D.W.'s testimony about R.M.'s property, appellant points out that their testimony conflicted with respect to the amount of cash R.M. usually carried. R.M. testified that he did not normally carry "that sum" of cash, namely $700. D .W., on the other hand, testified that he did regularly carry such large sums. She also testified that he was not known to carry a knife or wear jewelry. The jury, as explained above, was free to resolve the state's conflicting testimony however it chose. Even if the testimony established that R.M. rarely carried large amounts of cash and was not known to wear jewelry or carry a knife, the jury was still free to believe that he did so on the night in question. Both R.M. and D.W. testified as to the property stolen from R.M. Officer Dripps testified to finding the same amount of cash and R.M.'s identification on appellant's person at the Maumee Bay scene. A police detective testified to recovering a pocketknife and a gold necklace there as well. In choosing to credit the state's version of these particulars, we cannot say that the jury clearly lost its way.

Appellant argues that the circumstances of R.M.'s presence at Club 57—such as the late hour and the large amount of cash in R.M.'s possession—suggests an illegal drug deal, rather than a night out with his fiancée. Again, the jury was free to credit the state's interpretation of these factual circumstances, while discrediting appellant's. R.M. testified that he had just cashed his paycheck that evening. Both he and D.W. testified that they had spent time with their children and gone shopping prior to going to Club 57. We cannot say that the jury lost its way in crediting the state's interpretation of uncontested facts.

Appellant claims a reasonable juror could not believe R.M.'s testimony because R.M. was on federal parole for drug-related crimes and, thus, had a personal interest in testifying that he was not engaged in illegal activity that night. During cross-examination, however, R.M. admitted that he had previous drug-related convictions and that he was on federal parole at the time. The jury, therefore, was free to evaluate the credibility of R.M.'s testimony in light of his status as a federal parolee. The jury also had reason to find appellant less than credible. He significantly changed his story between his initial police interview and his testimony at trial. The trier of fact was in the best position to observe the demeanor of the witnesses and to evaluate their testimony. The jury apparently found the testimony of R.M. more credible than appellant's. The trier of fact's credibility determinations receive great deference from a reviewing court. As the jury was in the best position to assess the credibility of the witnesses and their testimony, we cannot say that, in crediting R.M.'s version of events over appellant's, the jury clearly lost its way.

We now turn, finally, to appellant's contention that the state failed to provide credible evidence of his possession of a firearm during the events in question. While it is true that no firearm was ever recovered, either at the Club 57 scene, the Maumee Bay scene, or elsewhere, the state's witnesses both testified that appellant possessed, brandished, and threatened to use a handgun while robbing and assaulting them. R.M. gave testimony identifying the weapon as a 9 mm semiautomatic handgun. Appellant himself admitted during his initial interview with police to possessing a 9 mm Hi–Point. Lastly, R.M. testified to hearing gunshots shortly after he and D.W. were robbed and D.W. was raped. Spent shell casings matching the 9 mm handgun were found at the scene. Ultimately, it was for the jury to weigh the evidence in light of the fact that no firearm was ever found. We cannot say that, by choosing to credit the state's case instead of appellant's, the jury clearly lost its way in concluding that appellant possessed a firearm during the events in question.

In the end, any inconsistencies between appellant's testimony and the testimony of the state's witnesses are for the jury to resolve. None of appellant's objections to the jury's resolution of the case's factual questions alter that role. We cannot say that the jury lost its way either in finding the state's witnesses to be more credible than appellant or in concluding that the aggregate evidence the state presented was more convincing than the testimony given by appellant. The victims' testimony, the accounts of officers

> responding to the two scenes, the victims' property recovered from
> appellant's possession, and appellant's multiple versions of the
> night's events, provided the jury with sufficient evidence to find
> appellant guilty of all counts beyond a reasonable doubt. We do
> not find that the jury's verdict that appellant was guilty on all
> counts was against the manifest weight of the evidence.

*State v. Taylor,* 2015 WL 3857079, at \*8-10.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, 443 U.S. at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume – even if it does not appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. (quoting *Jackson*, 443 U.S. at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), *cert. denied*, 558 U.S. 1114 (2010), deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Second, and even if a de novo review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.; see also White*

*v. Steele*, 602 F.3d 707, 710 (6th Cir.), *cert. denied*, 562 U.S. 868 (2010). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner has not done so.

For the reasons addressed by the state appellate court, this Court likewise concludes that, when viewing all of the evidence in the light most favorable to the prosecution, the evidence is constitutionally sufficient to sustain Petitioner's convictions.

### Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE